IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| ALCHEMY ADVISORS L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. |
| | ) | |
| CEDARBURG PHARMACEUTICALS, INC., | ) | |
| CEDARBURG PHARMACEUTICALS, LLC, | ) | |
| CLI VENTURES, INC., and | ) | **JURY TRIAL** |
| | ) | **DEMANDED** |
| JAMES YARGER, Individually, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

### Introduction

1.     Plaintiff Alchemy Advisors, L.L.C. ("Alchemy") brings this lawsuit to remedy Defendants intentional refusal to pay Alchemy an undisputed debt.  In June of 2002, Defendants Cedarburg Pharmaceuticals, Inc., Cedarburg Pharmaceuticals, LLC, and CLI Ventures, Inc. ("CLI"), then doing business as, or through their predecessor named, Cedarburg Laboratories, Inc. (hereinafter, unless otherwise stated, the corporate Defendants shall be referred to as "Cedarburg"), were seeking introductions to potential investors in Cedarburg.  Cedarburg and its president, Dr. James Yarger ("Yarger"), thus entered an agreement with Alchemy in which Cedarburg and Yarger agreed to pay Alchemy a five percent (5%) success fee on any investment proceeds which resulted from Alchemy's identification of the financing source.  Alchemy identified Sanders, Morris, Harris Group Inc. ("SMH") as a financing source, introducing Cedarburg to SMH and later assisting the due diligence between Cedarburg and SMH.  SMH made an approximate ten million five hundred thousand dollar ($10,500,000.00) investment in

1

Cedarburg, entitling Alchemy to an approximate five hundred and twenty-five thousand dollar ($525,000.00) success fee under the contract.  Cedarburg paid Alchemy forty thousand dollars ($40,000.00) of the fee but then failed to pay the remaining balance, asserting that it did no have the capital to do so.  In short, Cedarburg and Yarger now owe Alchemy over four hundred and eighty-five thousand dollars ($485,000.00) and interest.

**Parties**

2.     Alchemy is a citizen of Missouri in that it is a limited liability company organized under the laws of Missouri with its principal place of business in Missouri at 9648 Olive Boulevard, Suite 239, St. Louis, Missouri 63132.

3.     Alchemy is in the business of consulting for pharmaceutical, biotechnology, medical device and other human life science companies. Alchemy consults on all issues for such companies, including identification of potential financing sources.

4.     On information and belief, Cedarburg Pharmaceuticals, Inc. is a citizen of Wisconsin in that it is corporation organized under the laws of Wisconsin with its principal place of business in Wisconsin at 870 Badger Circle, Grafton, Wisconsin 53024. On information and belief, Cedarburg Pharmaceuticals, Inc. has previously done business as Cedarburg Laboratories, Inc. and/or Cedarburg Pharmaceuticals, LLC or in the alternative Cedarburg Pharmaceuticals, Inc is the successor in interest to Cedarburg Laboratories, Inc. and/or Cedarburg Pharmaceuticals LLC, which sometimes did business as Cedarburg Laboratories Inc., because Cedarburg Pharmaceuticals, Inc. either (1) expressly or impliedly agreed to assume Cedarburg Laboratories, Inc. and/or Cedarburg Pharmaceutical LLC's liabilities; or (2) Cedarburg Pharmaceuticals, Inc. consolidated or

merged with Cedarburg Laboratories, Inc. and/or Cedarburg Pharmaceuticals LLC; or (3) Cedarburg Pharmaceuticals, Inc. is a mere continuation of Cedarburg Laboratories, Inc. and/or Cedarburg Pharmaceuticals LLC; or (4) Cedarburg Pharmaceuticals, Inc. formed to escape liability for Cedarburg Laboratories, Inc. and/or Cedarburg Pharmaceuticals LLC's obligations.

5.     Cedarburg Pharmaceuticals, Inc. is in the business of developing, manufacturing and selling active pharmaceutical ingredients ("APIs") of pharmaceutical and biopharmaceutical drugs sold by pharmaceutical and biopharmaceutical companies. In addition to its contacts with Missouri vis-à-vis the claims alleged in this Complaint as more fully described below, Cedarburg Pharmaceuticals, Inc. has continuous and systematic contacts with Missouri in that, on information and belief, it regularly purchases goods and services in Missouri, including purchasing from Mallinckrodt and Sigma-Aldrich Corporation.

6.     On information and belief, CLI is a citizen of Wisconsin in that it is corporation organized under the laws of Wisconsin with its principal place of business in Wisconsin at 870 Badger Circle, Grafton, Wisconsin 53024. On information and belief, CLI has previously done business as Cedarburg Laboratories, Inc. and/or Cedarburg Pharmaceuticals, LLC or in the alternative CLI is the successor in interest to Cedarburg Laboratories, Inc. and/or Cedarburg Pharmaceuticals LLC, which sometimes did business as Cedarburg Laboratories Inc., because CLI either (1) expressly or impliedly agreed to assume Cedarburg Laboratories, Inc. and/or Cedarburg Pharmaceutical LLC's liabilities; or (2) CLI consolidated or merged with Cedarburg Laboratories, Inc. and/or Cedarburg Pharmaceuticals LLC; or (3) CLI is a mere continuation of Cedarburg Laboratories, Inc.

3

and/or Cedarburg Pharmaceuticals LLC; or (4) CLI formed to escape liability for Cedarburg Laboratories, Inc. and/or Cedarburg Pharmaceuticals LLC's obligations.

7. On information and belief, CLI is in the business of developing, manufacturing and selling active pharmaceutical ingredients ("APIs") of pharmaceutical and biopharmaceutical drugs sold by pharmaceutical and biopharmaceutical companies. In addition to its contacts with Missouri vis-à-vis the claims alleged in this Complaint as more fully described below, CLI has continuous and systematic contacts with Missouri in that, on information and belief, it regularly purchases goods and services in Missouri and sells its products in Missouri, including purchasing from and selling to, Mallinkrodt, and purchasing from Sigma-Aldrich Corporation.

8. On information and belief, Cedarburg Pharmaceuticals, LLC is a citizen of Wisconsin in that it is or was a limited liability company organized under the laws of Wisconsin with its principal place of business in Wisconsin at 870 Badger Circle, Grafton, Wisconsin 53024. On information and belief, Cedarburg Pharmaceuticals, LLC has previously done business as Cedarburg Laboratory, Inc. and/or Cedarburg Pharmaceuticals, Inc. and/or CLI and is liable for the obligations of the same and has merged into Cedarburg Pharmaceuticals, Inc.

9. On information and belief, Cedarburg Pharmaceuticals, LLC is or was in the business of developing, manufacturing and selling active pharmaceutical ingredients ("APIs") of pharmaceutical and biopharmaceutical drugs sold by pharmaceutical and biopharmaceutical companies. In addition to its contacts with Missouri vis-à-vis the claims alleged in this Complaint as more fully described below, Cedarburg Pharmaceuticals, LLC has continuous and systematic contacts with Missouri in that, on

4

information and belief, it regularly purchases goods and services in Missouri and sells its products in Missouri, including purchasing from and selling to, Mallinkrodt, and purchasing from Sigma-Aldrich Corporation.

10.     Yarger is a citizen of Wisconsin, residing in or around Cedarburg, Wisconsin.

11.     At all times material hereto, Yarger was the President of Cedarburg.

## Jurisdiction and Venue

12.     This Court has subject matter jurisdiction of this controversy pursuant to 28 U.S.C. §1332 in that diversity of jurisdiction exists among the parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

13.     Venue is proper in this district because of a substantial part of the events or transactions giving rise to the claim as described below occurred in this district.

14.     This Court has personal jurisdiction of the Defendants pursuant to Missouri Revised Statute Section 506.500 in that Defendants have transacted business within the state and have made a contract within the state and the cause of action arises from the above contacts as described below.  In addition, as described above, Defendants have had continuous and systematic contacts with Missouri.

## Fact Applicable to all Counts

15.     Alchemy commenced operations in approximately November 2001. Alchemy is owned and managed by Robert Wetzel ("Wetzel").

16.     Prior to forming Alchemy, Wetzel had held several positions in the pharmaceutical, biotechnology and life sciences industry and/or in the leverage buy-out, mergers and acquisitions and investment banking industry.  Among other things, Wetzel

5

had been a principal in the Douglas Group, a private middle market investment bank with a focus in the purchase and sale of middle market companies. Prior to his participation in the Douglas Group, Wetzel was the director of pharmaceutical mergers and acquisitions and strategic planning for Solutia Inc. ("Solutia"), a diversified chemical and pharmaceutical manufacturer, which had previously spun off from Monsanto Inc. Prior to his employment at Solutia, Wetzel was a managerial consultant for Ernst and Young. Furthermore, Wetzel was a senior Manager at Sigma-Aldrich Corp., a leading life science company which supplies reagents and APIs to the pharmaceutical, biotech and life sciences industries, for seven (7) years.

17.    Thus, before forming Alchemy, Wetzel had gained substantial knowledge and experience in all aspects of the pharmaceutical, biotechnology and life sciences industry, as well as substantial knowledge and experience in the corporate finance, capital funding and financing industries.

18.    In 2001, Wetzel formed Alchemy, a consulting company that assists pharmaceutical, biotechnology and life science companies in all aspects of their operations, including but not limited to, capital funding assistance, corporate development, regulatory and advisory work, in licensing and out licensing work, merger and acquisition work, strategic planning, temporary senior management and business development services.

19.    As stated above, Cedarburg develops, manufactures and sells active pharmaceutical ingredients ("APIs") of pharmaceutical and biopharmaceutical drugs sold by pharmaceutical and biopharmaceutical companies. Solutia had considered purchasing Cedarburg during Wetzel's employment at Solutia, and as a result, when Wetzel started

6

Alchemy he had a working knowledge of Cedarburg's operations and a positive relationship with Cedarburg's management. In addition, Cedarburg knew that Wetzel had significant experience in the contract pharmaceutical business and experience in identifying potential capital investors in contract pharmaceutical and life sciences companies via Wetzel's experience at both Solutia and Sigma-Aldrich Corporation.

20.     In early 2002, Cedarburg, through Yarger, expressed to Alchemy a desire to use Alchemy to help identify potential financing sources for Cedarburg.

21.     Alchemy and Cedarburg then negotiated a contract for Alchemy's services. The contract was signed by Yarger on behalf of Cedarburg and in his individual capacity. A true and correct copy of the contract is attached hereto as Exhibit 1 and is incorporated by reference.

22.     Among other things, the contract states as follows:

As compensation for Alchemy's services hereunder, fees for this engagement shall include a one time non-refundable retainer of $1,000.00 payable at inception of this engagement. In the event that Cedarburg enters into due diligence with a financing source as a result of Alchemy's identification of a financing source, Cedarburg hereby agrees to pay a monthly non-refundable retainer of $1,000.00 per month. Additionally, Cedarburg hereby agrees to pay Alchemy a success fee in the amount equal to the sums of Paragraphs numbered one and two below, less the aggregate amount paid as retainers, in the event the financing source was as a result of Alchemy's identification or efforts. The success fee shall be payable at the closing by certified or cashier's check, by wire transfer or other immediately available funds. Payment of all success fees will be immediately upon and in conjunction with the closing of any transaction. Such financing may come from an independent third-party acceptable to Cedarburg or Dr. James G. Yarger. The exact character of the financing will depend upon the potential rate of return offered by Cedarburg in exchange for such financing, the tenor of the exposure, the nature of the security offered, and the general financial condition of the Company. The payment of the success fee is not preconditioned as to the amount or terms of the debt or equity committed to Cedarburg or Dr. James G. Yarger. If Cedarburg or Dr. James G. Yarger accepts the financing and the financing closes, a suitable financing is deemed to have occurred, and Alchemy is to

7

be paid his [sic] success fee in the event the financing is a result of Alchemy's identification of a financing source.  Under the terms of this agreement, Alchemy will therefore be paid in the following manner provided that in no event will Alchemy receive payment under both Paragraph 1 and Paragraph 2 for the same dollars of funding:

1.  Cedarburg hereby agrees to pay Alchemy a success fee of five percent (5%) of the aggregate principal amount of all subordinated debt financing raised as a result of Alchemy's identification of a financing source.

2.  Cedarburg hereby agrees to pay Alchemy a success fee of five percent (5%) of the gross proceeds of all equity securities financing (including, without limitation, convertible securities and preferred stock) as a result of Alchemy's identification of a financing source.

23.     Thus, under the contract, Alchemy was entitled to a five percent (5%) success fee on any financing proceeds invested in Cedarburg that resulted from Alchemy identifying the investor.

24.     Pursuant to the contract, Alchemy began to seek financing sources for Cedarburg.

25.     Alchemy identified multiple potential financing sources for, including Frank Wright, a wealthy former pharmaceutical executive, and Key Principal Partners, a private investment firm specializing in investment in middle market companies, and other entities.  Indeed, Frank Wright, Key Principal Partners, and other entities entered due diligence with Cedarburg, for which Cedarburg paid Alchemy the due diligence retainer fees as described in the contract.  These due diligence retainer fees were paid in June of 2002, August 2002, October 2002, and November 2002.  However, none of these potential sources chose to invest in Cedarburg.

26.     Sometime prior to July 2003, Wetzel had communications with Jim Gale ("Gale") of SMH, an asset management and investment banking institution.   In his

8

communications with Gale, Wetzel learned that SMH had an interest in investing in pharmaceutical and life sciences service companies.

27.    Wetzel then introduced SMH to Cedarburg.  Specifically, on July 1, 2003, Wetzel wrote Gale an e-mail, referring SMH to Cedarburg as a potential target for SMH's "life science portfolio," describing Cedarburg's need "for some expansion capital," calling Cedarburg "the highest quality CMO in the US," and offering to put Gale in touch with Cedarburg's founder, Yarger.  A true and correct copy of the e-mail is attached as Exhibit 2 and is incorporated by reference.

28.    Wetzel blind carbon copied Yarger on the July 1, 2003 e-mail, and Yarger responded to Wetzel with an e-mail, thanking him "for keeping [Cedarburg's] name out there" and telling Wetzel that he would forward Wetzel "a shareholder update" in the next day or so.  A true and correct copy of this e-mail is attached as Exhibit 4 and is incorporated by reference.

29.    SMH then became interested in investing in Cedarburg, performing due diligence on Cedarburg.

30.    Alchemy assisted Cedarburg in the due diligence.  For example, in early to mid-November of 2003, Alchemy reviewed and performed analysis on the term sheet for the financing between SMH and Cedarburg.  See Exhibit 3 hereto (true and correct copies of e-mails between Alchemy and Cedarburg, acknowledging Alchemy's receipt of the term sheet for review and demonstrating Alchemy's "analysis of the funding alternatives."), which is incorporated by reference.  Indeed, Cedarburg paid Alchemy a due diligence retainer fee for SMH, as described in the contract, in March of 2004.

31.     In December of 2003, February of 2004, and February of 2007, three financing transactions closed between SMH and Cedarburg, for a total capital investment of approximately ten million and five hundred thousand dollars ($10,500,000).

32.     These transactions were a result of Alchemy's identification of SMH as a potential financing source and Alchemy's other efforts.

33.     Thus, under the contract, Alchemy was entitled to the success fee of five percent (5%) of the total investment or approximately five hundred and twenty-five thousand dollars ($525,000).

34.     However, after the financing closed in February of 2004, Cedarburg and Yarger maintained that they could not afford to pay the fees due from the December 2003 and February 2004 transactions in one lump sum, contrary to the terms of the agreement.

35.     Because of this, the parties agreed that Cedarburg could make the payments in increments.  Cedarburg began to make $10,000 payments to Alchemy on the balance and made four such payments, one in April of 2004, one in May of 2004, one in June of 2004, and one in July of 2004.

36.     However, after July of 2004, Cedarburg and Yarger ceased all payments to Alchemy.

37.     As a result, after considering reduction of previously paid due diligence retainer fees, Cedarburg and Yarger (collectively "Defendants") now owe Alchemy approximately $485,000 plus applicable interest, which includes the 2007 transaction, which Cedarburg never informed Alchemy of and which Alchemy discovered through its own efforts.

38.     Almost all of the actions regarding the claims stated herein took place in Missouri.  For example, Cedarburg and Yarger negotiated a contract via telephone and facsimile with Alchemy, specifically making telephone call and sending facsimiles to Missouri in the negotiation.   Also, Alchemy executed the terms of the contract in Missouri.  The contract was performed in Missouri.  For example, Alchemy's actions in identifying financing sources and performing due diligence under the contract took place in Missouri, including but not limited to, the following. Alchemy e-mailed and teleconferenced with all of the potential investors identified above (i.e. Frank Wright, Key Principal Partners, SMH and others) from Alchemy's St. Louis, Missouri office.  In addition, Alchemy e-mailed and teleconferenced with Cedarburg and Yarger regarding potential investors and due diligence in Missouri.  Cedarburg and Yarger sent e-mails to Missouri, including the e-mails thanking Alchemy for referring Cedarburg to SMH and the e-mails containing the term sheet for the financing between SMH and Cedarburg for Alchemy's review.   Cedarburg and Yarger also made telephone calls to Alchemy in Missouri to discuss potential investors and due diligence.  Cedarburg and Yarger also sent all of the payments under the contract, including the retainer fees and the partial payments on the success fee to Missouri.  Finally, Alchemy performed the due diligence review of the SMH/Cedarburg term sheet described above in Missouri.

### COUNT I
### (Breach of Contract)

39.     Alchemy incorporates by reference paragraphs 1-36 as if fully set forth herein.

40.     Defendants made a valid and enforceable contract with Alchemy, including offer, acceptance, and consideration.

11

41.    The contract imposed rights and obligations upon each party thereto, including an obligation on Defendants' part to pay Alchemy a success fee for any financing that was a result of Alchemy identifying the source of such financing.

42.    Alchemy has fully performed its obligations under the contract.

43.    Defendants have failed to perform their obligations under the contract, including its obligation to pay the total amount of said success fee.

44.    As a direct and proximate result of Defendant's breach, Alchemy has suffered damage in an amount in excess of $485,000.00.

WHEREFORE, Alchemy prays for judgment and an award of damages in excess of $485,000 in its favor, plus an award of costs, interest, and other relief as this Court deems just and proper.

### COUNT II
### (Unjust Enrichment)

45.    Plaintiff incorporates by reference paragraphs 1-36 as if fully set forth herein.

46.    Plaintiff has conferred a benefit upon Defendants, including but no limited to, the benefit of identifying SMH as an investor, referring Cedarburg to SMH, and assisting with the due diligence of the financing of Cedarburg by SMH.

47.    The Defendants have appreciated that benefit, including the acceptance of the financing provided by SMH and the retention of the success fee.

48.    That Defendants have accepted and retained the benefit by not paying the full amount of the success fee, under circumstance such that it is inequitable to do so.

WHEREFORE, Alchemy prays for judgment and an award of damages in excess of $485,000 in its favor, plus an award of costs, interest, and other relief as this Court deems just and proper.

Respectfully submitted,

BYRON GERBER PETRI & KALB, LLC

Christopher J. Petri, #97807
241 N. Main St.
Edwardsville, IL 62025
Telephone – (618) 655-0600
Telecopier – (618) 655-4004
Attorney for Plaintiff