UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALCHEMY ADVISORS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:08CV1964 FRB |
| | ) |
| CEDARBURG PHARMACEUTICALS, INC., | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Presently pending before the Court is defendants' Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction (Docket No. 8). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff brings this breach of contract action in diversity alleging that the defendant-Cedarburg companies[1] and their president, James Yarger, breached their contract for plaintiff's services whereby they agreed, but failed, to pay plaintiff a "success fee" of five percent on any investment proceeds in Cedarburg which resulted from plaintiff's identification of the financing source. Specifically, plaintiff

---

[1]In its Complaint, plaintiff names Cedarburg Pharmaceuticals, Inc., Cedarburg Pharmaceuticals LLC, and CLI Ventures, Inc., as defendants (referred to collectively as "Cedarburg"). Plaintiff avers that, at all relevant times, these defendants were doing business as, or acting through, their predecessor Cedarburg Laboratories, Inc., of which defendant James Yarger was president.

claims that it identified Sanders, Morris, Harris Group ("SMH") as a financing source for Cedarburg and that SMH ultimately invested over ten million dollars in Cedarburg, but that Cedarburg made only a partial payment of the success fee due and owing to plaintiff for the SMH deal. Defendants are citizens of the State of Wisconsin. Plaintiff is a Missouri limited liability company. Defendants now seek to dismiss this action under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. Plaintiff has responded to the motion to which defendants have replied.

In bringing this cause of action, plaintiff bears the ultimate burden of proving jurisdiction. However, to defeat a motion to dismiss for lack of personal jurisdiction, plaintiff need only make a prima facie showing of jurisdiction. Romak USA, Inc. v. Rich, 384 F.3d 979, 983 (8th Cir. 2004); Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). In determining such a motion, the Court must view the pleadings and affidavits in a light most favorable to the nonmoving party. Dakota Indus., 946 F.2d at 1387 (citing Watlow Elec. Mfg. v. Patch Rubber Co., 838 F.2d 999, 1000 (8th Cir. 1988)); Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir. 1977); see also Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072-73 (8th Cir. 2004) (Court may look to matters outside the pleadings to determine whether personal jurisdiction exists).

In the instant cause, the relevant facts before the Court

in relation to defendants' motion are as follows: Cedarburg is a contract pharmaceutical company based in Wisconsin. Cedarburg is in the business of developing, manufacturing and selling active pharmaceutical ingredients of pharmaceutical and biopharmaceutical drugs sold by pharmaceutical and biopharmaceutical companies. At all relevant times, defendant Yarger was the president of Cedarburg and resided in Wisconsin. (Compl. at paras. 10, 11.) Plaintiff Alchemy Advisors ("Alchemy") is a consulting company based in Missouri that assists pharmaceutical, biotechnology and life science companies in all aspects of their operations, including capital funding assistance, corporate development, regulatory and advisory work, licensing work, merger and acquisition work, strategic planning, temporary senior management services, and business development services. (Id. at paras. 2, 3, 18.) Robert B. Wetzel formed Alchemy Advisors and currently is the sole member of the company. (Id. at para. 15; Wetzel Decl. at paras. 2, 3.)

In early 2002, Cedarburg, through Yarger, telephoned Alchemy in Missouri, and inquired whether Alchemy could assist Cedarburg and perform corporate finance services for the company. Cedarburg and Alchemy thereafter negotiated the terms of an agreement, with such negotiations occurring via telephone, e-mail, facsimile transmission, and regular mail. (Compl. at para. 20, 21; Wetzel Decl. at paras. 18, 19.) On June 3, 2002, Cedarburg entered into a contract with Alchemy whereby Alchemy agreed to help arrange

suitable financing programs to assist in Cedarburg's requirement for debt and equity financing. Under the terms of the contract, Alchemy would be compensated by Cedarburg for its services by way of retainer and other fees, including a "success fee" in the event Alchemy's efforts resulted in a financing source for Cedarburg. The contract was executed in Wisconsin upon Cedarburg's written acceptance of Alchemy's written offer to provide such financial services. The terms of the contract provided for it to be governed by Wisconsin law. (Compl., Exh. 1.)

Alchemy's performance of the contract occurred primarily in the State of Missouri, with such performance including the development of a profile package about Cedarburg to induce financing sources to contemplate financing Cedarburg, researching and identifying potential financing sources, introducing Cedarburg to potential financing sources, assisting in the due diligence review of any documents regarding any investment transaction, and assisting Cedarburg in the negotiation of terms and conditions of financing. (Wetzel Decl. at paras. 18, 20, 21.) From its office in St. Louis, Missouri, Alchemy e-mailed and teleconferenced with potential Cedarburg investors, including SMH. In Missouri, Alchemy met with and called potential investor Key Principal Partners numerous times regarding a potential investment in Cedarburg. Cedarburg called Key Principal Partners in Missouri regarding its potential investment in Cedarburg. In addition, numerous e-mails

and teleconferences occurred between Alchemy in Missouri, and Cedarburg and Yarger regarding potential investors, due diligence, and negotiation of financing. Retainer fees owed pursuant to the contract between plaintiff and Cedarburg were sent by Cedarburg to Alchemy in Missouri. (Id. at paras. 22, 23.)

Alchemy was successful in securing financing for Cedarburg through SMH. Alchemy performed the due diligence review of the SMH/Cedarburg term sheet in Missouri. Such term sheet was provided to Alchemy in Missouri via e-mail from Cedarburg. With regard to the SMH financing deal, Cedarburg sent partial payments of the "success fee" to Alchemy in Missouri. (Wetzel Decl. at para. 22.) It is the remainder of this success fee which Alchemy seeks to recover in this lawsuit.

Cedarburg does not currently produce goods or services in Missouri, nor does it currently store items in Missouri. (Holzrichter Affid. at para. 5.) Cedarburg is not currently registered to do business in Missouri, has no registered agent in Missouri for service of process, and owns no property in Missouri. (Id. at paras. 6, 7.) Cedarburg employees do not travel to Missouri to supply goods or services. (Id. at para. 9.) In the past, but with specific times undisclosed, Cedarburg shipped goods to Missouri and received shipments from suppliers located in Missouri. (Id. at para. 10, 12.)

**Discussion**

In determining whether plaintiff has established a prima facie case of personal jurisdiction, the Court must examine whether Missouri's long-arm statute confers jurisdiction over the defendants. Porter v. Berall, 293 F.3d 1073, 1075 (8th Cir. 2002). If so, the Court must then determine whether the exercise of personal jurisdiction would violate the Due Process Clause of the Constitution. Id.; Austad Co. v. Pennie & Edmonds, 823 F.2d 223, 225 (8th Cir. 1987). Because it is well settled that the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the Due Process Clause, the Court turns immediately to the question of whether the assertion of personal jurisdiction over defendants would violate the Due Process Clause. Porter, 293 F.3d at 1075.

Due process requires sufficient "minimum contacts" between a defendant and the forum state so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

The Supreme Court has recognized two theories pursuant to

which personal jurisdiction may be asserted over a non-resident defendant: general jurisdiction and specific jurisdiction. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984). *General jurisdiction* may be established if the defendant has carried on a continuous and systematic, even if limited, part of its general business in the forum state. In such circumstances, the alleged injury need not have any connection with the forum state. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 779 (1984). For general jurisdiction to attach, however, defendant's contacts must be more than "random, fortuitous or attenuated." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985); Keeton, 465 U.S. at 774. *Specific jurisdiction* is appropriate only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities. Burger King Corp., 471 U.S. at 472. See Steinbuch v. Cutler, 518 F.3d 580, 586 (8th Cir. 2008).

To evaluate the sufficiency of a defendant's contacts, the Court considers five factors: 1) the nature and quality of the defendant's contacts with the forum state; 2) the quantity of such contacts; 3) the relation of the cause of action to the contacts; 4) the interests of the forum state in providing a forum for its residents; and 5) the convenience of the parties. Steinbuch, 518

F.3d at 586 (citing <u>Burlington Indus., Inc. v. Maples Indus., Inc.</u>, 97 F.3d 1100, 1102 (8th Cir. 1996)). The first three factors are given primary importance. <u>Id.</u> The third factor, addressing the relation of the cause of action to the contacts, applies only with respect to specific jurisdiction and is immaterial in a general jurisdictional inquiry. <u>Id.</u> (citing <u>Johnson v. Woodcock</u>, 444 F.3d 953, 956 (8th Cir. 2006)). Because the first three factors are closely interrelated in this cause, they will be addressed together.

In the instant cause, the information before the Court is insufficient to demonstrate that Cedarburg's general contacts with the State of Missouri bring it within the general jurisdiction of the state. However, upon review of Cedarburg's contacts with the forum state in relation to the instant cause of action, the undersigned finds plaintiff to have presented sufficient <u>prima facie</u> evidence that specific personal jurisdiction exists over the defendants in the cause. <u>E.g.</u>, <u>Bell Paper Box, Inc. v. U.S. Kids, Inc.</u>, 22 F.3d 816, 819 (8th Cir. 1994) (contacts which are insufficient to subject foreign party to general jurisdiction may be sufficient for specific jurisdiction related to cause of action).

As noted by the defendants in their motion, it is well settled that contact by telephone or mail is insufficient alone to justify exercise of personal jurisdiction under the Due Process

Clause. See, e.g., T.J. Raney & Sons, Inc. v. Security Sav. & Loan Ass'n of Salina, Kan., 749 F.2d 523, 525 (8th Cir. 1984). See also Porter, 293 F.3d at 1076; Bell Paper Box, Inc. v. Trans W. Polymers, Inc., 53 F.3d 920, 923 (8th Cir. 1995). In addition, "[m]erely entering into a contract with a forum resident does not provide the requisite contacts between a [nonresident] defendant and the forum state." Iowa Elec. Light & Power Co. v. Atlas Corp., 603 F.2d 1301, 1303 (8th Cir. 1979); see also Trans W. Polymers, 53 F.3d at 922. However, where a foreign party actively solicits a party in the forum state to engage in a business relationship from which the foreign party would obtain benefit, and remains actively engaged in that business relationship with the resident party, the foreign party avails itself of the benefits of the forum state and is subject to specific personal jurisdiction there. See Wessels, Arnold & Anderson v. National Med. Waste, Inc., 65 F.3d 1427, 1432-33 (8th Cir. 1995); Northrup King Co. v. Compania Productora Semillas Algondoneras Selectas, S.A., 51 F.3d 1383, 1388-89 (8th Cir. 1995); St. Jude Med., Inc. v. Lifecare Int'l, Inc., 250 F.3d 587, 591-92 (8th Cir. 2001).

> It is essential in each case that there is some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. Where a forum state seeks specific personal jurisdiction over a non-resident defendant, due process is satisfied if the defendant has purposely directed his

> activities at residents of the forum . . . and
> the litigation results from alleged injuries
> that arise out of or relate to those
> activities.

Wessels, Arnold & Henderson, 65 F.3d at 1432.

Such is the case here.

In relation to this cause of action, the defendants here actively solicited Alchemy to enter into an agreement whereby Alchemy would undertake to perform services for Cedarburg, and specifically, to find financial investors in Cedarburg, and to perform the necessary research, investigation and review in order for Cedarburg to secure such financing. Nearly all of the work required to be performed by Alchemy was performed in Missouri. In negotiating the terms of the agreement and in fulfilling the agreement, Cedarburg engaged in several communications in Missouri, including communications with Alchemy and potential investors, and in providing agreed-to payments to Alchemy in Missouri. Cedarburg obtained benefit from the relationship it solicited from Alchemy, with such relationship culminating in a multi-million dollar financing package for Cedarburg. It is Cedarburg's alleged breach in relation to plaintiff's procurement of this financing package which forms the basis of the instant litigation. Because Cedarburg actively pursued a business relationship with Alchemy in Missouri, it cannot be said that Cedarburg's continuous contacts with Missouri in relation to this business relationship were merely

random or attenuated. In addition, because the brunt of the injury sustained as a result of the alleged breach would be felt by plaintiff in the State of Missouri, the contacts set out above relating to defendants' solicitation of and continued business with plaintiff in the state are sufficient for personal jurisdiction. See Calder v. Jones, 465 U.S. 783, 789-90 (1984); Steinbuch, 518 F.3d at 586; Wessels, Arnold & Anderson, 65 F.3d at 1429-31, 1433.

Although defendants argue that jurisdiction is lacking because Cedarburg has no agent in the State of Missouri nor sent any officers or employees for in-person visits with Alchemy or others in the State of Missouri, the lack of physical presence is not determinative of the question of personal jurisdiction. See Burger King Corp., 471 U.S. at 476 ("Jurisdiction . . . may not be avoided merely because the defendant did not physically enter the forum State."); U.S. Kids, 22 F.3d at 819 (physical presence not required to support personal jurisdiction). Defendants also argue that personal jurisdiction should not be asserted over them in Missouri inasmuch as plaintiff traveled to Wisconsin to sign the contract and the contract contained a Wisconsin forum selection clause. Such facts are of "no consequence" to the determination whether defendants had sufficient contacts with Missouri to support this Court's jurisdiction over this lawsuit. U.S. Kids, 22 F.3d at 820. Although such facts would be relevant if defendants sought to bring suit against plaintiff in Wisconsin, see id., defendants'

emphasis regarding plaintiff's contacts with Wisconsin does nothing to tip the balance away from finding specific personal jurisdiction in this cause of action.

The final two factors in the due process analysis — the interest of the forum state and the convenience of the parties — bear less significance than the first three factors, but nevertheless support the assertion of personal jurisdiction in this cause.  A forum state has "an obvious interest in providing a local forum in which its residents may litigate claims against non-residents."  Northrup King, 51 F.3d at 1389.  In addition, while nothing before the Court shows one forum to be more convenient than another in the circumstances of this case, the undersigned notes that "[a] plaintiff normally is entitled to select the forum in which it will litigate."  Id.  Because, for the reasons set out above, traditional notions of fair play and substantial justice are not otherwise offended by this Court's assertion of personal jurisdiction over the defendants here, any inconvenience to the defendants does not outweigh plaintiff's choice of forum.

The determination of whether minimum contacts exist between a defendant and the forum state "is one in which few answers will be written 'in black and white.  The greys are dominant and even among them the shades are innumerable.'"  Kulko v. California Superior Court, 436 U.S. 84, 92 (1978) (quoting Estin v. Estin, 334 U.S. 541, 545 (1948)).  Although the defendants'

contacts with Missouri are minimal, they nevertheless are sufficient in the context of the instant litigation to confer specific personal jurisdiction in the case. U.S. Kids, 22 F.3d at 820.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendants' Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction (Docket No. 8) is denied.

_____
UNITED STATES MAGISTRATE JUDGE

Dated this _15th_ day of July, 2009.